# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Philip Smith, | Civil Action No. 14-cv-_____ |
| Plaintiff, | **JURY DEMAND** |
| v. | |
| | **COMPLAINT** |
| National Football League, NFL Films, Inc. and NFL Productions, L.L.C., | |
| Defendants. | |

## COMPLAINT

Plaintiff by and through undersigned counsel, states the following:

### BACKGROUND

1. Plaintiff is a retired National Football League ("NFL") football player. He has been injured as a result of NFL Defendants' unauthorized use of his identity, including but not limited to his name, image, symbol, and likeness, for the purpose of promoting the NFL, selling NFL-related products, and otherwise generating income for the NFL Defendants and the NFL's member teams.

2. Over the course of decades, NFL Defendants have earned substantial revenue by producing promotional films and selling products featuring the identities of retired NFL football players, including Plaintiff. The NFL Defendants' glorification of the NFL's past is a marketing and advertising strategy used to convey authenticity, enhance the NFL's brand awareness and increase the NFL Defendants' revenue.

1

3. Unfortunately, the retired players whose feats are used to advertise the NFL are not and have never been compensated by the NFL Defendants for the use of their identities.

4. NFL Defendants' conduct has violated, and continues to violate, Plaintiff's right of publicity and other statutory and common laws. As a result of these violations, Plaintiff brings this action seeking compensation for the NFL Defendants' past unauthorized use of his identity and to stop this egregious misconduct going forward.

## PARTIES

5. Plaintiff has all opted out of the proposed settlement class in *Dryer v. NFL,* 09-CV-2182 (D. Minn.). His former membership in that proposed class tolls the limitation period for the claims brought in this Complaint.

6. Plaintiff Philip Smith is a resident of California. He is a retired NFL player who played for the Baltimore Colts in 1983, the Indianapolis Colts in 1984, the Philadelphia Eagles in 1986, and the Los Angeles Rams in 1987. His image has been used and continues to be used in productions of NFL Films without his authorization, causing him injury.

7. Defendant, National Football League (hereinafter referred to as "the NFL") is an unincorporated association founded in 1920 as the American Professional Football Association. The NFL consists of thirty-two independent football clubs and maintains a principal place of business at 280 Park Avenue, New York, NY 10017.

8.      The NFL also owns and operates NFL Network, a television venture launched in November 2003 that is broadcast through various cable and satellite providers. The NFL Network has tens of millions of subscribers and viewers.

9.      Defendant NFL regularly engages in business in this judicial district.

10.     Defendant NFL Films, Inc. is a corporation organized under the laws of Delaware, the state of its incorporation, with a principal place of business located at One N.F.L. Plaza, Mt. Laurel, New Jersey 08054.

11.     Since the 1960's, Defendant NFL Films, Inc. has been engaged in the business of filming and/or distributing motion pictures of NFL football games for promotional and commercial purposes.

12.     NFL Films, Inc. had been a "subsidiary" of the National Football League in that the NFL owners own and /or otherwise control NFL Films, Inc.

13.     Defendant NFL Productions, L.L.C. is a limited liability company with its principal place of business in New Jersey located at One NFL Plaza, Mt. Laurel, NJ 08054 and organized under the laws of the State of Delaware. NFL Productions controls the footage of NFL games that include the images of retired players as well as footage that was shot in this judicial district. On information and belief Defendant NFL Productions, L.L.C. regularly conducts business within this judicial district.

14.     Plaintiff refers to Defendants collectively as "NFL Defendants" because on information and belief the actions of the NFL Defendants are ultimately controlled by the NFL itself and its owners.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1331 because this action arises under the Lanham Act, 15 U.S.C. § 1525. The Court has jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

16. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the NFL Defendants transact business within this judicial district and are subject to the *in personam* jurisdiction of this Court.

## FACTS

17. The NFL Defendants' glorification of NFL history is a vital component of its present marketing and revenue-generation efforts.

18. The NFL Defendants use NFL Films to sell products, enhance its brand and generate revenue.

19. As a part of this effort, the NFL Defendants use the names, images, symbols, and likenesses of retired NFL players to sell products, enhance its present brand and generate revenue.

20. The NFL Films website has explicitly stated that its "function" is "[t]o promote the National Football League and preserve its history for generations of future fans."

21. Sports Illustrated has called NFL Films "the most effective propaganda organ in the history of corporate America."

22.     The subjects of these propaganda works are retired NFL Players, including Plaintiff, and the NFL Defendants use their names, images, symbols, and likenesses in their films to promote the NFL, sell products, and generate income.  The retired players, including Plaintiff, are not compensated by the NFL Defendants for the use of their names, images, symbols, and likenesses.

23.     NFL Defendants produce commercial and promotional films highlighting the NFL's past, utilizing raw footage of former players taken from their voluminous archive of filmed professional football games and related events, and developing brand new promotional and marketing products based on that footage.

24.     In 2009, Barry Wolper, Vice President of NFL Films, stated that "NFL Films is the world's largest sports film library, containing more than 100 million feet of NFL archival footage.  While the collection amounts to millions of dollars worth of film, the memories associated with these legendary games and plays are priceless."

25.     NFL Films' productions are not broadcasts, re-broadcasts, or basic accounts of NFL games.  Rather, NFL Films' productions are promotional and commercial film productions with scripts, music, editing, direction and production.

26.     The NFL Defendants have distributed and distribute NFL Films in several ways.  The NFL broadcasts NFL Films features on its own NFL Network, and for years NFL Defendants have licensed productions to cable television stations such as ESPN, ESPN Classic, HBO, and major non-cable networks. The NFL Defendants also sell NFL Films movies directly to consumers in catalogs, over the Internet, and at retail outlets.

27. The NFL Defendants have earned enormous revenues from NFL Films, including but not limited to fees paid by networks to air the films, revenue from advertisements run during the broadcast of the films, sales of the films as individual products, and from the revenue generated by the realized promotional effect of the films on the NFL's brand and marketability.

28. Using its NFL Network alone, the NFL broadcasts "hundreds of hours" of NFL Films productions and other programming featuring retired NFL players each year. As the NFL described it, "[a]s a year-round channel, NFL Network will draw heavily on the resources of NFL Films and its new 200,000 square foot television and film studio complex as well as its immense film library to produce hundreds of hours of original and classic programming including, but not limited to, NFL Films Presents and NFL Films Presents - Game of the Week in HD, Playbook, College Football Sunday, Football America, Point After, and Film Session." Indeed, "[w]ith more than 100 million feet of film in its library, NFL Films is the backbone of NFL Network."

29. The NFL Defendants also sell hundreds of different NFL Films productions directly to consumers, nationally and internationally, at retail outlets, in catalogs and over the Internet at www.nflfilms.com, www.nflshop.com and through Warner Home Video at www.profootballdvd.com. In addition to selling NFL Films, the NFL Defendants license NFL Films and the identities of retired NFL Players for numerous other commercial purposes.

30. The NFL Films' website offers hundreds of productions available for purchase. The NFL Defendants use the names of specific retired NFL players to promote many of the films for sale. The NFL Defendants use the names, images, symbols, and likenesses of retired NFL players on

the packaging, advertising, and sales descriptions of other NFL Films' productions and products available elsewhere.

31.     The NFL Defendants have sold and sell NFL Films' productions and other utilizations of the identities of retired players around the world.

32.     The NFL Defendants have used the names, images, symbols, and/or likenesses of retired players commercially on the Internet to promote the NFL's brand, to sell products, and to otherwise increase the NFL's revenue as an independent entity and on behalf of its thirty-two member clubs.

33.     The identities of retired players the NFL Defendants have used to generate revenue are readily identifiable because they are portrayed by name, image, uniform, number, likeness, symbol, and/or other unique aspects, not to mention announcers and narrators identifying various players as well.

34.     Moreover, these images are not altered, yet are the absolute essence of the NFL Films productions.  Without the use of players' images, there would be nothing to depict in the productions, nothing of interest to fans and consumers, and hence no value in the finished commercial work.

35.     Hence, the depiction of player likeness is central to the core of the experience of watching the footage. Other added features of NFL Films' products, such as music, do not alter or transform retired players', including Plaintiff's, identities in any way, let alone in any significant way.

36. In addition, on information and belief, the NFL Defendants have digitized much of its entire NFL Films' library and archives so that retired players may be searched for and isolated by year, game, team, and/or player name.

37. The NFL is fully aware of the extremely high value of the names, images, symbols, and likenesses of its players and takes extreme measures to restrict access and dissemination of NFL player footage and images in any form.  For instance, the NFL restricts media, including local news outlets, to showing only 45 seconds per day of footage of NFL players shot in any fashion at league or team facilities.  This includes non-playing situations such as news conferences, interviews and practice-field reports. If a media outlet shows any footage on its website, the NFL requires the outlet to provide links to both www.nfl.com and to the player's NFL team's website. The NFL bars non-affiliated media outlets from selling any Internet advertising connected to the presentation of NFL player footage on non-NFL affiliated websites.

38. The NFL's restrictions of player images and footage are not limited only to current players.  If a media outlet, such as a local news station, wishes to use footage of retired players as part of reporting the news, it must pay the NFL large fees.

39. The NFL also prohibits retired NFL players, including Plaintiff, from using their own names, images, likenesses, symbols, and other indicia of identity as players to promote themselves commercially or otherwise profit.  If, for example, a player attempts/attempted to promote himself or his business by showing footage of himself as a player, the NFL would immediately order him to cease.  The NFL does, in certain circumstances, allow such

promotional uses by retired players, but only if a player pays the NFL exorbitant sums for the right to do so.  Even then, the player is at the mercy of the NFL, which maintains the ability to withdraw its permission at any time, for any reason or for no reason at all.

40.     The NFL's intent in restricting public access to the names, images and identities of its players is to drive fans and revenue to NFL-owned and affiliated outlets to view NFL images, footage and programming.  As one team spokesman, the Washington Redskins' Chris Helein, informed the Washington Post, "There are a number of reasons for [barring videographers], but it's basically a content issue[.]  I won't hide ... the fact that the NFL and everything that surrounds it is valuable content".

41.     This extremely high value of these images factored into the motive of the NFL in creating its own NFL Network in 2003 to drive and capture fans seeking programming related to professional football.  As the NFL describes it, "NFL Network is a melting pot of gridiron greats from the NFL's past, present and future that will sate the voracious appetites of millions of football fans across the country."

42.     Further evidence of the great value of NFL players' likenesses is found in the standard player contract for NFL players.  Beginning in 1993, the NFL began requiring active player contracts to include clauses granting the NFL the authority to use the players' names, images, and likenesses to publicize and promote the NFL. Such assignments do not apply to retired players, because their player contracts are, by definition, no longer in force.

43.     By his present Complaint, Plaintiff seeks to obtain his fair share of the revenues the NFL Defendants have earned, presently earns, and will earn, by the NFL's use of his identity.

## FIRST CAUSE OF ACTION
### (False Endorsement, § 43(a) of the Lanham Act, (15 U.S.C. § 1125))

44. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

45. § 43(a)(1)(A) of the Lanham Act states:

> (1)  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof..., which-
>
> > (A)  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

46. NFL Defendants use the actual names of retired NFL players on its website to promote the league, and on its NFL Films' website catalog, among other places, to identify and solicit sales of its NFL products.

47. NFL Defendants also use the names, images, symbols, and/or likenesses of retired NFL players, including Plaintiff, in NFL Films' productions, among other places, for the explicit purpose of promoting the NFL, increasing its brand awareness, and creating revenue through product sales and consumer preference of the NFL over other entertainment options.

48. NFL Defendants use the actual names of retired NFL Players in connection with product descriptions and do so for the purpose of advertising and selling specific NFL Films' videos and other products. The NFL Defendants also use the names, images, symbols, and likenesses of retired players in connection with promoting the NFL as a specific, consumable entertainment product.

49. The identities of the retired players, including Plaintiff, the NFL Defendants feature in its promotional NFL Films and other products are recognizable. The names, images, and likenesses of all professional athletes are highly recognizable because of the popularity of professional sports. Professional players also wear uniforms, numbers, and name plates, and/or have readily identifiable movements, statements, or accessories making them readily recognizable to consumers.

50. The NFL Defendants' motivation in producing NFL Films and featuring the names, images, symbols, and/or likenesses of retired players is purely economic. The motivation is to sell NFL products, increase the NFL's brand power by its glorifying its past, and to persuade consumers to spend money on the NFL and its member teams instead of other entertainment options.

51. NFL Defendants do not simply use the names, images, symbols, and likenesses of retired players to report the news or for historical pieces. NFL Defendants use retired players for promotional pieces intended to portray the NFL in the most positive light possible. At no point in any NFL Film does anyone criticize the NFL, as they would if it were an objective news or historical piece.

52. NFL Films are not 30-second television advertisements, but they are intended to and do serve the same promotional purpose. Similar to "infomercials", NFL Films are intended to focus consumers on the drama and intrigue of the NFL as a consumable entertainment product. Retired players are the uncompensated stars of these promotional films.

53. Plaintiff has legally protectable rights in his name, image, symbol, and/or likeness: Plaintiff owns these rights outright. Any assignment of such rights made, for example, in his standard player contracts, expired with the expiration of such contracts.

54. The NFL Defendants' use of the names, images, symbols, and/or likenesses of retired players, including Plaintiff, in its promotional NFL Films productions and other products is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of the NFL with retired players as to the origin, sponsorship, or approval of the goods, services, or commercial activities by Defendant. Plaintiff does not sponsor or approve of the goods and services for which the NFL Defendants are using their names, images, symbols, and/or and likenesses without authorization.

55. The NFL Defendants' use of the names, images, symbols, and/or likeness of Plaintiff in its promotional NFL Films productions and/or other products creates actual confusion concerning Plaintiff's sponsorship or approval of those goods or services.

56. As a direct and proximate result of NFL Defendants' misconduct, Plaintiff has suffered injury.

**SECOND CAUSE OF ACTION**
**(Violations of State Right of Publicity)**

57. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

58. Plaintiff has been and continues to be injured as a result of NFL Defendants' misappropriation of his publicity rights by use of the Internet, television and by other means.

59. NFL Defendants have violated Plaintiff's right of publicity under applicable law.

61. As a direct and proximate result of the NFL Defendants' unlawful conduct, Plaintiff has been injured.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

60. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

61. NFL Defendants have been unjustly enriched by obtaining money through unlawful means and at the expense of Plaintiff.

62. Under common law principles of unjust enrichment, NFL Defendants should not be permitted to retain the benefits conferred by such ill-gotten income.

63. Plaintiff seeks disgorgement of all of monies NFL Defendants have obtained or derived from the unauthorized use of Plaintiff's identity for promotional or commercial purposes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

a. Award Plaintiff equitable relief as allowed by law, including issuing an injunction prohibiting the NFL Defendants from broadcasting, distributing or otherwise disseminating any production using the name, image, symbol, and/or likeness of Plaintiff;

b. Award Plaintiff all damages allowed by law;

c. Grant Plaintiff declaratory relief as allowed by law;

d. Award Plaintiff costs and attorneys' fees against NFL Defendants as allowed by law; and

e. Grant such other or further relief as allowed by law and as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated:  September 25, 2014 		Respectfully submitted,

GOLDBERG, PERSKY & WHITE, P.C.

/s/*David B. Rodes*
David B. Rodes, Esquire
*Admitted Pro Hac Vice*
drodes@gpwlaw.com
Jason E. Luckasevic, Esquire
*Admitted Pro Hac Vice*
jluckasevic@gpwlaw.com
Jason T. Shipp, Esquire
*Admitted Pro Hac Vice*
jshipp@gpwlaw.com
1030 Fifth Avenue
Pittsburgh, Pennsylvania 15219
(412) 471-3980 (phone)
(412) 471-8308 (facsimile)